# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES CARLTON RILEY, III<br>SS# XXX-XX-XXXX,<br><br>      Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | No. 13 C 6252<br><br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Carlton Riley III ("Plaintiff") filed this civil action pursuant to 28 U.S.C. § 405(g) against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant"), seeking review of Defendant's final decision denying his application for social security disability insurance benefits ("DIB"). For the following reasons, this case is remanded back to the Social Security Administration.

## I. FACTUAL BACKGROUND

Plaintiff is 41-years-old, married, and has one child. He is 6 feet and 2 inches tall, weighs approximately 330 pounds, and has a history of back problems. Plaintiff has a high school education and has worked either as a cutting machine tender operator or a grinding machine operator the majority of his adult life. In April 2003, Plaintiff injured his back while picking up sheet metal at work. After conservative treatment proved ineffective, Plaintiff underwent back surgery in July 2003, specifically, a microdiscectomy of his L4-5 to remove a herniated disc. Plaintiff's condition temporarily improved, but his symptoms soon returned. In November 2003, Plaintiff again underwent surgery. Dr. Richard Lim, the surgeon who performed Plaintiff's prior

1

surgery, executed another microdiscectomy to remove a re-herniated disc at L4-5 and a newly herniated disc at L5-S1. After his second surgery, Plaintiff's condition improved but he still reported some tolerable, intermittent back pain.

In March 2009, Plaintiff was laid off from his job as a grinding machine operator. He began an internship in October 2010 in the field of surgical technology. On November 29, 2010, Plaintiff went to the emergency room complaining of lower back pain and numbness in his right leg. At the emergency room, Plaintiff explained his symptoms were likely caused by a long car trip he had taken the previous weekend. The medical records from Plaintiff's emergency room visit reflect that Plaintiff could not raise his right or left leg and that there was no tenderness in his back. His final diagnosis was back pain with sciatica. Plaintiff was told to follow up with Dr. Lim. As a result of his condition, Plaintiff was unable to complete the internship.

On December 2, 2010, Dr. Lim ordered a Magnetic Resonance Imaging ("MRI") of Plaintiff's back, which revealed congenital lumbar spinal stenosis. After consulting with Dr. Lim, Plaintiff elected to undergo another corrective operation. Dr. Lim performed Plaintiff's third operation on January 10, 2011, namely a posterior spinal fusion at L4-5, decompression at L4-5 and L5-S1, a transforaminal lumbar interbody fusion at L4-5 and L5-S1, a local bone graft, and interbody cage insertion at L4-5.

On January 18, 2011, at his first postoperative meeting, Dr. Lim noted that Plaintiff reported he was feeling overall much better, that most of his pain in his right leg was gone, but that he still occasionally experienced shooting pain. The treatment note is ambiguous regarding what part of Plaintiff's body the shooting pain came from. Plaintiff's next appointment with Dr. Lim was on February 18, 2011. At that appointment, Plaintiff indicated that he felt much better and had ceased taking all pain medications. However, Plaintiff remarked that he was having left-

sided buttock pain and left-sided posterior leg pain. Dr. Lim ordered Plaintiff to begin a physical therapy program.

Plaintiff underwent an initial physical therapy evaluation at his first physical therapy session on February 22, 2011. The evaluation shows that Plaintiff complained of back pain and tightness in his left leg that radiated to his knee. He also reported that sitting on a hard surface for too long aggravated these symptoms and that on average his pain was between zero and one on a scale from one to ten. The therapist's assessment also notes that Plaintiff had slow, guarded position changes, a slow gait, minimal lower back pain, a limited range of motion in his trunk, limited muscle flexibility, lower extremity weakness and resulting functional limitations. The assessment is silent on what Plaintiff's "resulting functional limitations" actually were. The therapist recommended that Plaintiff continue the therapy program twice a week for four to six weeks.

Plaintiff attended physical therapy from February 22, 2011 to May 19, 2011. Therapy notes from this time period reveal that Plaintiff complained of tightness, stiffness, or spasms in his back or buttocks at more than half of his sessions. Records also show that his right leg sciatic pain and condition overall was improving. On multiple occasions, Plaintiff reported that he was feeling good and had no problems at all.

Plaintiff returned to Dr. Lim for a follow-up appointment on April 8, 2011. At that appointment, Plaintiff reported he was feeling about 90% better and off all narcotics. Plaintiff's x-rays showed "the alignments of his implants [were] good." His range of motion was still limited, likely because of "the two level fusion," as well as the need for further rehab. Dr. Lim ordered Plaintiff return for another appointment in six weeks. At the conclusion of therapy on May 19, 2011, Plaintiff reported that he felt 95% better. The therapist's final comments on

Plaintiff's condition indicate that Plaintiff had made minimal progress in terms of his range of motion and had reached a progress plateau.

The following day, Plaintiff reported to Dr. Lim that he was very pleased and that 100% of his pain was gone. At this appointment, Plaintiff's x-rays showed his "fusion to be robust." However, Plaintiff also reported that he still had some discomfort in his anterior thighs and that his movement was still limited. Dr. Lim opined that Plaintiff's lower extremity symptoms were likely the result of permanent nerve damage. He noted that Plaintiff had a limited range of motion secondary to his two-level fusion and ordered Plaintiff to continue his at-home exercises, lose weight, and to follow up in three months for additional x-rays.

On August 19, 2011, Plaintiff returned to Dr. Lim, complaining that he was having back pain on an almost daily basis and that a few weeks prior to the appointment "he had a marked flare-up of pain." He also reported that he had numbness and tingling in his lower left back. Dr. Lim's treatment note shows that an examination of Plaintiff revealed tenderness over his "PSIS" consistent with where Plaintiff indicated the pain was coming from. To alleviate his symptoms, Plaintiff told Dr. Lim he "redoubled" his home exercises, used his exercise bike, and took anti-inflammatory medication. Dr. Lim recommended that Plaintiff continue his exercise program and return for appointments on a yearly basis.

At the same appointment, Dr. Lim completed a physical residual functional capacity ("RFC") questionnaire. In his assessment, Dr. Lim diagnosed Plaintiff with severe lumbar degenerative disc disease. He opined that in an 8-hour workday, Plaintiff could only sit or stand for fifteen-minute intervals for a total of four hours of sitting and standing. Dr. Lim also opined that Plaintiff would need to walk at least five minutes after sitting or standing for fifteen minutes and would also need to take at least one or two unscheduled breaks lasting between fifteen and

twenty minutes during an 8-hour work day. Additionally, Dr. Lim determined that Plaintiff would need a job that permits shifting position at will from sitting, standing, or walking. Dr. Lim concluded that Plaintiff's condition allowed him only to occasionally climb stairs, rarely stoop, bend, crouch, or climb, and never twist.

## II. PROCEDURAL HISTORY

### A. Plaintiff's Initial Application

On December 13, 2010, Plaintiff filed an application for social security disability insurance benefits ("DIB") alleging that he had been disabled since November 30, 2010. At the request of the Social Security Administration and as part of his application for DIB, Dr. Reynaldo Gotanco, a non-examining reviewer, completed a RFC assessment of Plaintiff. Dr. Gotanco's conclusions were drawn from Plaintiff's November 29, 2010 emergency room records, January 10, 2011 postoperative report and x-rays, and Dr. Lim's February 18, 2011 treatment note. On March 17, 2011, Dr. Gotanco opined that 12 months after November 30, 2010—Plaintiff's alleged onset date—that Plaintiff could sit, stand, or walk for around six hours in an 8-hour workday. He also opined that Plaintiff had occasional postural limitations for climbing ramps, stairs, ladders, ropes, and scaffolds, as well as stooping, kneeling, and crouching. Based on Dr. Gotanco's conclusions, the Social Security Administration found that Plaintiff could perform light work. As such, Plaintiff's initial application was denied on March 28, 2011.

### B. Reconsideration of Plaintiff's Initial Application

Upon reconsideration of Plaintiff's initial application, Dr. Virgilio Pilapil, a non-examining reviewer, concurred with Dr. Gotaco's assessment based on the same evidence.

Consequently, on May 24, 2011, the Social Security Administration again denied Plaintiff's request for DIB.

**C.      Plaintiff's Hearing Before an ALJ**

Plaintiff requested a hearing before an administrative law judge ("ALJ") on June 7, 2011. The proceeding was held on May 9, 2012, and presided over by ALJ Michael Hellman. At his hearing before the ALJ, Plaintiff testified that the surgery performed in January 2011 did relieve the pain in his right leg. The pain in his back, however, had not ceased since the surgery. Specifically, Plaintiff testified he had a persistent dull acute pain in his lower left back and burning in his thighs and left hip. Plaintiff testified that as a result of these symptoms he could only stand in place for approximately thirty minutes without feeling a burning sensation in his thighs, which was relieved by walking around. Plaintiff also stated that he spent most of his day in a reclined "lazy boy chair," but would have to walk around his home after about twenty minutes due to pain and pressure in his lower back.

Plaintiff also stated that his impairments hinder his ability to perform daily household activities. Plaintiff indicated he has difficulties dressing himself, particularly while attempting to put on socks and undergarments. He also stated that he typically only cooks microwavable meals with the exception of some small dinners cooked over the stove. Plaintiff testified he can only wash small dishes for a short period of time without pain. Additionally, Plaintiff told the ALJ that it now takes him an hour to clean the living room when the same task prior to the surgery took only fifteen minutes and that he generally cannot pick up things from a standing position. He also testified that his ability to play with his son has been limited. If Plaintiff is to lay on the floor to play with his son, he has to get up every ten to fifteen minutes to relieve his

back pain. Plaintiff also explained that he takes his son to and from pre-school, which is about a ten-minute drive from Plaintiff's home.

When questioned about what he used for pain management, Plaintiff testified that he used Advil, but that it did not help much. He also explained that he stopped physical therapy because it did not aid in his recovery, although stretching does alleviate his symptoms. Plaintiff also indicated that physical therapy taught him how to stretch and do his at-home exercises.

On May 21, 2012, the ALJ issued a written decision denying Plaintiff's claim for disability benefits. Using the five-step sequential evaluation process, 20 C.F.R. § 404.1520(a)(4)(i)—(v), the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity. At step two, the ALJ concluded Plaintiff had the severe impairment of lumbar degenerative disc disease. The ALJ, at step 3, held Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff had a residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1457(b), except that he could occasionally climb ladders, ropes, scaffolds, ramps or stairs; and that he can occasionally stoop, kneel, crouch, and crawl.

In reaching the step four determination, the ALJ found that Plaintiff's testimony regarding the dull, acute pain in his lower left back, burning in thighs and hips, feeling stiff, and difficulty bending to pick things up from the ground were medically determinable impairments that could be reasonably expected to cause the alleged symptoms. However, with regard to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, the ALJ ruled they were not credible because the medical record did not support Plaintiff's allegations. Additionally, the ALJ specifically rejected Dr. Lim's opinion regarding Plaintiff's

7

limitations except for his limitations on lifting and climbing stairs. The ALJ reasoned Dr. Lim's opinion was not supported by his "own objective observations" of Plaintiff or his recommended treatment plan. Further, the ALJ also concluded Dr. Lim's opinion was inconsistent with Plaintiff's remarks indicating improvement and the complaints Plaintiff made at his August 2011 appointment. As such, the ALJ found Dr. Lim's opinion to carry only "little weight." On the other hand, the ALJ found the state's examiners' opinions more compelling and gave them "great weight" in determining Plaintiff's residual functional capacity. According to the ALJ, the non-reviewing examiners' opinions were more consistent with the record.

At the conclusion of his step four analysis, the ALJ found Plaintiff could not perform his past relevant work. Finally, at step five, based off Plaintiff's education, job skills, age, residual functional capacity, and testimony of the vocational expert, the ALJ concluded there were a significant number of jobs Plaintiff could perform in the national economy. Accordingly, the ALJ found Plaintiff not disabled.

**D.     Appeals Council Decision**

Plaintiff subsequently requested that the Appeals Council review the ALJ's decision, and he submitted three new pieces of evidence to the Appeals Council in his request for review, all of which postdate the ALJ's hearing decision. The new pieces of evidence consisted of an MRI taken June 15, 2012, a treatment note from Dr. Lim dated June 22, 2012, and a functional capacity evaluation ("FCE") completed by Thomas Mulvey, MS, PT, dated August 2, 2012. The Appeals Council denied Plaintiff's request for review, making the ALJ's decisions the final decision of the Commissioner. Regarding the additional evidence submitted, the Appeals council determined that the new information was immaterial because it was "about a later time" and,

therefore, did not affect the decision about whether Plaintiff was disabled beginning on or before May 21, 2012.

### III. STANDARD OF REVIEW

This Court reviews "the Commissioner of the Social Security Administration's decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 368—369 (7th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support to a conclusion." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotations omitted). The ALJ need not address every piece of evidence or testimony present, but he "must provide a logical bridge between the evidence and his conclusions." *Id*. The court reviews the entire record but does "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### IV. ANALYSIS

Plaintiff seeks reversal or remand of the Commissioner's final decision, arguing the Commissioner erred on three fronts. First, Plaintiff contends that the Appeals Council erred in finding that the evidence submitted with his request for review was immaterial. Second, Plaintiff argues the ALJ failed to properly consider Dr. Lim's opinion in determining his residual functional capacity. Finally, Plaintiff asserts the ALJ's credibility determination was "patently wrong." The court addresses each issue in turn.

**A.      Materiality of Evidence Submitted to the Appeals Council**

The decision of the Appeals Council denying review of a claimant's case is within its discretion and unreviewable. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). This Court

may, however, consider whether the Appeals Council committed an error of law in applying 20 C.F.R. § 404.970(b) when it refused to consider additional evidence in a claimant's application for review. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). The governing regulation, 20 C.F.R. § 404.970(b), provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

"New" evidence means evidence that is literally new to the administrative record at the time it was presented to the Appeals Council. *Farrell*, 692 F.3d at 771. "New evidence is material if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Still, "new evidence" is material only if it relates to the period on or before the date of the ALJ hearing decision. *Id.*; 20 C.F.R. § 404.970(b). "Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition on or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

Plaintiff submitted three pieces of "new" evidence to the Appeals Council for consideration: (1) an MRI taken by Dr. Richard Lim dated June 15, 2012; (2) a treatment note from Dr. Lim dated June 22, 2012; and (3) an FCE performed by Thomas Mulvey, MS, PT dated August 2, 2012. Plaintiff argues the Appeals Council's determination—that the new evidence was about "a later time" and, therefore, immaterial—was in error. Plaintiff also asserts that the evidence before the Appeals Council was material because it provided objective support to his

claims of lower back pain, tightness, and burning in his thighs and buttocks, and relates back to the time period under consideration. Furthermore, Plaintiff contends that the evidence before the Appeals Council was material because it rebutted the ALJ's reasoning as to why he found Plaintiff's testimony incredible. Defendant does not dispute that the evidence is new, as it was new to the administrative record at the time of Plaintiff's application for review before the Appeals Council. Rather, Defendant argues that the new evidence shows, if anything at all, that Plaintiff's condition had deteriorated since the ALJ hearing decision and thus only speaks to Plaintiff's condition after the relevant time period. In addition, Defendant contends that Plaintiff's statements indicating improvement in his right leg bolster the conclusion that the June 2012 MRI and June 2012 treatment note do not relate to the relevant time period. I now address whether each submitted piece of evidence is material.

      1.      FCE Assessment

Contrary to Plaintiff's assertions, Mr. Mulvey's FCE assessment does not satisfy the materiality requirement of 20 C.F.R. § 404.970(b). The August 2012 FCE clearly postdates the ALJ's hearing decision and does not speak to Plaintiff's condition during the relevant time period. The FCE was an assessment of Plaintiff's *present* condition in August of 2012. In Mr. Mulvey's records, there are no references to Plaintiff's condition on or before May 21, 2012. Moreover, the therapist's summary of Plaintiff's evaluation does not indicate nor suggest that Plaintiff's demonstrated limitations were present prior to May 21, 2012. As such, the FCE is not material because it speaks only to Plaintiff's condition after the ALJ's hearing decision and could not have affected the ALJ's decision. *Getch*, 539 F.3d at 484.

2. MRI and Dr. Lim's Treatment Note

With respect to the MRI taken in June 2012 and Dr. Lim's June 2012 treatment note, the Court finds that these pieces of evidence are both "new" and "material." Although the evidence is postdated after the ALJ's hearing decision, the court cannot accept Defendant's position that these pieces of evidence are unrelated to the time period under consideration. To begin, the MRI offered to the Appeals Council was ordered less than a month after the ALJ's hearing decision and Dr. Lim's treatment note is dated only thirty-one days after the ALJ's decision. *See Bush v. Astrue*, 571 F.Supp.2d 866, 875 (N.D. Ill. 2008) (holding evidence submitted three months after ALJ's decision was material). Indeed, the MRI confirms that Plaintiff's condition did improve in some aspects. For example, Dr. Lim's notes interpreting the MRI indicate that in the L4-5 region—the area operated on three times—there was "evidence of moderate bilateral neural foraminal stenosis improved since the previous scan" and that Plaintiff's "mild spinal stenosis, decreased since previous scan." However, Dr. Lim also observed that problems unaddressed during the January 2011 surgery were "re-demonstrated" and in some instances more severe. In his accompanying treatment note, Dr. Lim opines, "It is evident that in a short period of time from his prior films that he is developing transitional stenosis above the level of his prior fusion." The prior MRI was taken in December 2010, before the January 2011 fusion. Plaintiff began to complain of these symptoms in February 2011 and continued to do so at every other appointment thereafter, which is consistent with Dr. Lim's treatment note indicating that Plaintiff's "transitional stenosis" began shortly after the December 2010 scan. Moreover, Plaintiff testified that the January 2011 fusion was ineffective in curing his lower back pain and that it had persisted since the surgery. As such, it seems highly unlikely that the conditions revealed in the June 2012 MRI failed to develop or manifest during the eighteen-month period

between December 2010 and May 21, 2012, and instead, as Defendant advances, only worsened within a mere four weeks after May 21, 2012.

Furthermore, the MRI and Dr. Lim's treatment note provide objective medical evidence that support his findings in the August 2011 RFC questionnaire. Similarly, the MRI and treatment note underscore Plaintiff's therapist's findings that concluded Plaintiff had a very limited range of motion and had reached a progress plateau. Finally, the MRI and treatment note help to undermine the ALJ's determination regarding Plaintiff's credibility. The treatment note explains the onset of Plaintiff's developing transitional spinal stenosis that occurred in a short period of time from his previous MRI. If this is so, Plaintiff's complaints about the severity of his pain could be explained by the re-demonstrated and worsening maladies that went untreated during the January 2011 surgery.

The Appeals Council committed legal error when it determined these two pieces of evidence were "about a later time," and therefore immaterial. This is not to say that the Appeals Council erred in denying Plaintiff's request for review, as that decision is within the Council's discretion and beyond review. *Perkins*, 107 F.3d at 1294. However, before reaching that decision, the Appeals Council should have considered Plaintiff's proffered June 2012 MRI and Dr. Lim's June 2012 treatment note. Thus, on remand, the Social Security Administration should consider Plaintiff's June 2012 MRI and June 2012 treatment note in determining whether Plaintiff's case should be reviewed.

**B.    ALJ'S RFC Determination**

The ALJ, relying on the state's examiners' RFC assessments, found that Plaintiff's residual functional capacity allowed for light work as defined by 20 C.F.R. § 404.1567(b), except that he can only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes,

scaffolds, ramps, or stairs. In making this determination, the ALJ concluded that Dr. Lim's objective observations, which consisted of Dr. Lim's documented remarks of Plaintiff's pain level, Dr. Lim's examination notes for Plaintiff, and Dr. Lim's interpretations of Plaintiff's x-rays from January 2011 to May 2011, did not support Dr. Lim's opinion. Consequently, the ALJ rejected all of Dr. Lim's conclusions, except the restrictions permitting only occasionally lifting twenty pounds and occasional stair climbing. Plaintiff argues the ALJ failed to sufficiently explain his reasons for not affording Dr. Lim's opinion "controlling weight."

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Although an ALJ is not required to give a claimant's treating physician's opinion controlling weight, the ALJ must provide a "sound explanation for his decision to reject it." *Id.* at 637.

The record contains substantial evidence to support the ALJ's conclusion that Dr. Lim's opinion was not entitled controlling weight; and his explanation, although not comprehensive, is sufficient. These objective observations reasonably show Plaintiff was improving and there were no problems with the instrument placed on Plaintiff's spine. Indeed, the ALJ did explicitly mention Plaintiff had some marked flare-ups in pain and that his PSIS was tender, but weighed that against Plaintiff's other remarks indicating substantial improvement, Dr. Lim's conservative treatment plan, and Plaintiff's normal x-rays, in concluding that Dr. Lim's opinion was inconsistent with substantial evidence. Moreover, the ALJ noted that Dr. Lim's opinion seemed to be based off Plaintiff's subjective complaints at the August 2011 appointment. *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("[W]here a treating physician's opinion is based on

the claimant's subjective complaints, the ALJ may discount it."); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (affirming ALJ's decision to reject treating physician's opinion because it was based almost entirely on the plaintiff's subjective complaints).

In a similar vein, Plaintiff argues that the ALJ ignored the required regulatory factors of 20 C.F.R § 404.1527 in determining what weight to give Dr. Lim's opinion. When a treating physician's opinion is not given "controlling weight," the ALJ must determine what weight to assign to the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In coming to this decision, the ALJ looks to the length of the medical source's treatment relationship and frequency of examination, the nature and extent of the relationship, supportability of the opinion, consistency of the opinion with the record, and the specialization of the physician. 20 C.F.R § 404.1527(c)(2)(i)—(6); *Campbell v. Astrue,* 627 F.3d 299, 308 (7th Cir. 2010)

Here, the ALJ did not explicitly mention each factor, but from the ALJ's discussion it is evident he sufficiently considered the required factors and "built an accurate and logical bridge between the evidence and his conclusion." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013). The ALJ noted that Plaintiff sought treatment from Dr. Lim, the same surgeon who performed his 2003 surgeries. In addition, the ALJ recounted each of Plaintiff's follow up appointments with Dr. Lim, indicating that he considered the nature and extent of Plaintiff and Dr. Lim's treatment relationship, as well as the frequency of examination. Furthermore, the ALJ provided specific reasons for assigning "little weight" to Dr. Lim's assessment. The ALJ concluded that Dr. Lim's opinion was based off Plaintiff's subjective complaints and that the opinion was inconsistent with Dr. Lim's objective observations of Plaintiff. The ALJ also noted that following the August 2011 appointment, Dr. Lim opined that Plaintiff had significant

limitations, yet prescribed no further treatment or intervention. Thus, based off the reasons the ALJ gave for affording Dr. Lim's opinion "little weight," it is evident that the ALJ did consider the degree to which Dr. Lim's opinion was supported and consistent with objective medical evidence and the record as a whole.

This Court's "inquiry is limited to whether the ALJ sufficiently accorded for the factors in 20 C.F.R. § 404.1527." *Id*. at 959. As such, although he did not explicitly detail every factor, the ALJ's reasoning reflects he "sufficiently accorded" a legally adequate number of the factors in assigning "little weight" to Dr. Lim's opinion. *see Elder v Astrue*, 529 F.3d 408, 415-416 (7th Cir. 2008) (affirming denial of benefits despite the ALJ only discussing two factors laid out in 20 C.F.R. § 404.1527); *Henke v. Astrue*, 498 Fed. Appx. 636, 640 n. 3 (7th Cir. 2012) (same). Consequently, the ALJ did not improperly handle Dr. Lim's opinion, and thus did not err in making his RFC determination.

**C. Credibility**

Plaintiff contends that the ALJ erred in finding his testimony not fully credible. The ALJ's credibility determinations are afforded special deference. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue* 688 F.3d 306, 311-312 (7th Cir. 2012) (internal quotations omitted). When an ALJ evaluates credibility, he "must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Id.* The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of

treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue* 573 F.3d 503, 517 (7th Cir. 2009).

Plaintiff primarily takes issue with the ALJ determining Plaintiff's statements concerning his pain lacked credibility because he sought no follow-up treatment from Dr. Lim or any other physician after August 2011. Plaintiff claims ALJ erred by failing to explore reasons for Plaintiff's lack of treatment. However, while questioning Plaintiff, the ALJ did explore reasons why Plaintiff did not seek further treatment after August 2011. The ALJ merely drew a negative inference based on Plaintiff's testimony. SSR 96-7p *6-8. Additionally, contrary to Plaintiff's assertions, the ALJ did not err in concluding that Plaintiff's credibility regarding the severity of his pain was undermined by his use of over-the-counter medication. SSR 96-7p *3 (When assessing credibility, an ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."); *see Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) (affirming ALJ''s decision that considered claimant's use of over-the-counter medication in finding testimony to be incredible).

Similarly, the ALJ found that Plaintiff's testimony was incredible because of his inconsistent statements concerning the effectiveness of narcotic pain medication and over-the-counter medicine in controlling his pain. The ALJ noted that Plaintiff had alleged that narcotic pain medication was completely ineffective. However, the ALJ found that there was no evidence on record to substantiate the claim. In addition, the ALJ observed that Plaintiff testified that Advil was ineffective at relieving his symptoms. But the ALJ also commented that when questioned why he continued to take it, Plaintiff indicated Advil was, in fact, helpful in pain management.

Plaintiff also takes issue with the ALJ's use of Plaintiff's physical therapy records in reaching his credibility determination. The ALJ did mention that Plaintiff stated therapy had not helped in his recovery. But the ALJ also noted that Plaintiff's therapist indicated some progress had been made. Further, the ALJ pointed to the Plaintiff's own inconsistent testimony regarding the benefit of physical therapy. Plaintiff testified that physical therapy did nothing to relieve his lower extremity pain; however, he also stated that stretching and doing his at-home exercises helped alleviate his symptoms. Plaintiff learned these exercises at physical therapy.

The ALJ also minimally articulated why Plaintiff's statements concerning his daily activities were incredible. First, the ALJ noted that Plaintiff, although in a limited capacity, is able to care for his son. He also found that the testimony concerning Plaintiff's daily activities was inconsistent with the medical evidence and contrary to Plaintiff's statements indicating substantial improvement. Plaintiff also submits that the ALJ made factual errors in his credibility determination, specifically that the ALJ did not accurately portray when Plaintiff alleged his disability began and why he stopped working. Plaintiff argues that the ALJ improperly claimed that Plaintiff only applied for DIB because he was laid off, rather than after his sciatic pain returned. However, the ALJ did not assert that Plaintiff applied for DIB only because he was laid off from his job as a grinding machine operator. The ALJ merely acknowledged that Plaintiff's alleged onset date was during his internship and that he stopped working as a grinding machine operator because he was laid off, not because of his impairments. Although the ALJ did not state that Plaintiff later quit his internship allegedly due to his impairments, the ALJ's observations about Plaintiff's alleged onset date and reasons for leaving his job are still nonetheless factually accurate.

The ALJ properly considered the objective medical evidence; Plaintiff's daily activities; Plaintiff's allegations of pain; aggravating factors; the types of treatment Plaintiff received; and medication taken by Plaintiff. *Rice*, 384 F.3d at 371. As such, the ALJ's credibility determination was based on substantial evidence, and thus not "patently wrong."

## V. CONCLUSION

For the aforementioned reasons, the Commissioner's final judgment denying Plaintiff's application for disability benefits is REVERSED and REMANDED to the Social Security Administration for further proceedings and reconsideration of the evidence consistent with this opinion.

ENTER:

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 5, 2014